FREDERICK B. WORRELL, JR., AND WIFE, HAZEL M. WORRELL, AND N. E. HORNE, v. W. E. ROYAL AND WIFE, JUANITA P. ROYAL.

(Filed 10 July 1968.)

**1. Deeds § 19—**

Restrictive covenants are not favored and are to be strictly construed against limitation on use.

**2. Deeds § 20—**

In an action seeking to enjoin defendants from violating restrictive covenants relating to a certain subdivision, nonsuit is proper where the instrument purportedly placing the restrictive covenants on the property is ambiguous as to whether defendants' property is included within the area restricted.

APPEAL from *Herring, District Court Judge,* 20 November 1967, Civil Session of CUMBERLAND District Court.

Plaintiffs seek a permanent injunction to require the defendants to cease and desist from violating the restrictive covenants pertain-

ing to Bordeaux Subdivision, Section 5, as recorded in Plat Book 18, page 61, of the Cumberland County Public Registry.

Upon motion the plaintiff, N. E. Horne, was removed as a party plaintiff. The case was tried before a jury and the jury answered the issue:

> "Do the restrictive covenants covering the subdivision known as Bordeaux, Section Number Five (5), prevent the defendants from erecting a service station on the property they own in that subdivision, as alleged in the Complaint?
> ANSWER: Yes."

The trial court signed a judgment permanently and forever restraining and enjoining the defendants from constructing or continuing to construct any building or fixtures to be used in furtherance of a service station business on their land as shown on the duly recorded plat of said Bordeaux Subdivision.

The defendants appealed from said judgment and assert that their motion to dismiss the case should have been granted for that their land is not subject to any restrictions.

*Brown, Fox & Deaver by Bobby G. Deaver, Attorneys for plaintiff appellees.*

*Rose & Thorp by Charles G. Rose, Jr., Attorneys for defendant appellants.*

CAMPBELL, J. In July, 1956, John Sandrock was the owner of a tract of land in Cumberland County which he caused to be laid off in lots and blocks, and a plat thereof recorded in Book of Plats 18, page 61, of the Cumberland County Public Registry. The recorded plat shows two blocks designated thereon, Block I and Block E. Block I contains twenty-two lots bearing numbers one through twenty-two, and Block E contains eighteen lots bearing numbers one through eighteen. A street designated "Boone Trail" divides the two blocks and the respective lots front on said Boone Trail. On the southwesterly side, Boone Trail runs into another designated road, "Roxie Avenue." The intersection is at an angle and, located in the intersection, there is shown a small circular portion of land with no designation as to number or as to its purpose in the subdivision. The plaintiffs are the owners of Lot 17, Block I, as shown on said map. They acquired their property by deed from Walter F. Snead and wife, dated 15 February 1958, and recorded 3 March 1958 in the Cumberland County Public Registry in Book 745, at page 269.

The defendants acquired "all of that unnumbered parcel of land

located at the intersection of Boone Trail and Roxie Avenue as shown on the aforesaid recorded plat" by deed from John Sandrock dated 28 February 1966, and recorded 8 March 1966 in Book 1161, at page 53, of the Cumberland County Public Registry.

Neither the deed to the plaintiffs nor the deed to the defendants refers to or incorporates therein any restrictions or covenants with regard to the use of the respective parcels of land. In Book 690, at page 294, of the Cumberland County Public Registry, there appears an instrument (hereinafter referred to as Sandrock Instrument) bearing date 14 July 1955, recorded 24 July 1956, in words and figures as follows:

"NORTH CAROLINA
CUMBERLAND COUNTY

Know all men by these presents:

That we, John Sandrock and wife, Katie Lee Sandrock, of said County of Cumberland, do hereby covenant and agree to and with all persons, firms and corporations now owning or hereafter acquiring any of those certain lots as shown on a plat of Bordeaux Subdivision Section V of record in Book of Plats 18, page 61, Cumberland County Registry, (*) are hereby subjected to the following restrictions as to the use thereof, and are covenants running with said property by whomsoever owned, to wit:

1. All lots in the tract shall be known and described as residential lots.

2. No structure shall be erected, altered, placed, or permitted to remain on any residential building plot other than one detached single-family dwelling and a private garage and other out-buildings incidental to residential use of the plot.

3. No building shall be located nearer to the front lot line or nearer to the side line than the building setback lines shown on the recorded plats. In any event, no building shall be located on any residential building plot nearer than thirty-five feet to the front lot line, nor nearer than ten feet to any sideline.

4. No noxious or offensive trade or activity shall be carried on upon any lot nor shall anything be done thereon which may be or become an annoyance or nuisance to the neighborhood.

5. No trailer, basement, tent, shack, garage, barn, or other outbuilding erected in the tract shall at any time be used as a residence temporarily or permanently, nor shall any structure of a temporary character be used as a residence.

6. No dwelling costing less than Eighty Five Hundred Dollars ($8500.00), based on current construction costs, or not *(sic)* house containing less than nine hundred (900) square feet of living area shall be permitted on any lot in the tract.

7. No structure to be built with exterior finish of concrete, cinder block or comparable block unless stucco finished with a minimum three-fourths inch masonry base.

8. A protective screening area three feet wide is established on any lot along the property line of said lot where said lot abuts the commercial area as shown on the plat. Planting, fences or walls shall be maintained throughout the entire length of such areas by the owner or owners of the lots at their own expense to form an effective screen for the protection of the residential area. No building or structure except a screen fence or wall or utilities or drainage facilities shall be placed or permitted to remain in such areas. No vehicular access over the areas shall be permitted except for the purpose of installation and maintenance or screening, utilities and drainage facilities.

These covenants shall run with the land and shall be binding on all parties and persons claiming under them until January 1, 1975, at which time said covenants shall be automatically extended for successive periods of ten years unless by vote of a majority of the then owners of the lots it is agreed to change said covenant in whole or in part.

If the parties hereto or any of them, or their heirs or assigns, shall violate any of the covenants herein, it shall be lawful for any other person or persons owning any real property situated in said development or subdivision to prosecute any proceedings at law or in equity against the person or persons violating or attempting to violate any such covenant, and either to prevent him or them from so doing or to recover damages as other dues for such violation.

Invalidation on any of these covenants by judgment or court order shall in nowise affect any of the other provisions which shall remain in full force and effect.

In testimony whereof, we have hereunto set our hands and several seals the 14th day of July, 1955.

John Sandrock          (Seal)
Katie L. Sandrock      (Seal)"

The plaintiffs contend that by virtue of this Sandrock Instrument all property shown on the recorded plat is restricted to use for residential purposes only and that the defendants cannot use their property for commercial purposes, such as a service station or any other purpose other than for a residence.

The defendants, on the other hand, assert that the Sandrock Instrument is invalid and ineffective for that certain words have been omitted which would have given it meaning and that in the absence of those words the instrument is ineffective for any purpose whatsoever. The defendants assert that their motion for judgment as of nonsuit should have been sustained and that the trial court was in error in failing to do so.

The question presented is whether the Sandrock Instrument, insofar as the piece of property owned by the defendants is concerned, is effectual to create a plan for a residential development or is said instrument completely ineffectual for that purpose. We are not concerned with and make no ruling as to property designated as lots by number shown on said plat.

The piece of land owned by the defendants bears no number as shown on the plat; it is not of sufficient size to have a building erected thereon in compliance with paragraph numbered three of the Sandrock Instrument and it obviously is not a residential lot.

Paragraph numbered eight of the Sandrock Instrument refers to "commercial areas" but no such areas are designated on the recorded plat.

In the preamble of the Sandrock Instrument at the point where we have marked an asterisk, it is obvious that some words were omitted which would have given more meaning to the instrument.

The Sandrock Instrument is ambiguous when applied to the parcel of land owned by the defendants and it cannot be said that the restrictions contained therein are "clear and unequivocal expressions of restrictions applicable thereto."

> "Restrictive covenants are not favored and are to be strictly construed against limitation on use. In the absence of clear and unequivocal expressions, restrictive covenants are not to be expanded and all doubts are to be resolved in favor of the free use of the property." *Hullett v. Grayson,* 265 N.C. 453, 144 S.E. 2d 206.

The Sandrock Instrument, insofar as applicable to the land of the defendants, "is of such doubtful meaning that the court, in the exercise of its equity jurisdiction, could not in good conscience grant the relief sought in this action." *Hullett v. Grayson, supra.* The motion for judgment as of nonsuit should have been allowed.

Reversed.

BRITT and MORRIS, JJ., concur.